IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JONATHAN CANTERBURY,** | Civil No. 3:11-cv-00293-AC |
| Plaintiff | |
| v. | **CORRECTED FINDINGS AND RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security | |
| Defendant. | |

ACOSTA, Magistrate Judge:

Plaintiff Jonathan Canterbury ("Canterbury") seeks judicial review of the Social Security Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § § 401-33, and Supplemental Security Income ("SSI") payments under Title XVI of the Act. 42 U.S.C. §§ 1381-83f. This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed for the reasons that follow.

///

///

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Born in 1975, Mr. Canterbury applied for benefits on January 8, 2007. Tr. 119-31.[1] He alleges disability since February 28, 2001 (*id.*), due to bilateral vertical talus ("club foot"), chronic pain, "paranoid antisocial behavior," and unspecified effects of an automobile accident. Tr. 147. The Commissioner denied these applications initially and upon reconsideration (Tr. 66-80), and an Administrative Law Judge ("ALJ") held a hearing on May 7, 2009. Tr. 22-60. The ALJ subsequently found Mr. Canterbury not disabled on August 4, 2009. Tr. 11-21. The Appeals Council declined review of the matter on January 6, 2011. Tr. 1-3. This action made the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 410.670a. Mr. Canterbury now appeals.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909;

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on July 26, 2011 (Docket # 11).

416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations. If it does, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

At step four, the ALJ uses this information to determine if the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(a)(4)(v); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 U.S. 137, 146 n.5; *Tackett*, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d. at 1100. If the Commissioner meets this

burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 416.920(g); *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ found Mr. Canterbury's bilateral congenital club feet, bilateral ankle arthritis, personality disorder, and adjustment disorder "severe" at step two in the sequential proceedings. Tr. 13. The ALJ found that these impairments did not meet or equal a "listed" disorder at step three (Tr. 15-17), and assessed Mr. Canterbury's RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work . . . the claimant can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can stand and/or walk with normal breaks about two hours in an eight-hour workday and sit with normal breaks about six hours in an eight-hour workday. The claimant needs the ability to sit and stand at will. There must be no repetitive or prolonged bending or stooping and no crawling or kneeling. Any walking should be slow, deliberate walking on even surfaces. The claimant should have minimal interaction with the public. Tr. 17.

The ALJ found that this RFC precluded performance of Mr. Canterbury's past relevant work at step four in the sequential proceedings, but concluded that this RFC allowed Mr. Canterbury to perform work in the national economy at step five. Tr. 20. The ALJ therefore found Mr. Canterbury not disabled. Tr. 20-21.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a

preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## ANALYSIS

Mr. Canterbury asserts that the ALJ erroneously evaluated (1) his credibility; (2) his impairments at step three in the sequential proceedings; (3) the opinions of an examining and two reviewing physicians; (4) the lay witness testimony; and (5) erroneously relied upon the vocational expert's testimony at step five in the sequential proceedings.

**I.     Credibility**

Mr. Canterbury argues that the ALJ's credibility analysis improperly addressed his activities of daily living and medical treatment in his credibility analysis. Pl.'s Opening Br. 9-13.

**A.     Credibility Standards**

The ALJ must consider all symptoms and pain which "can be reasonably accepted as

consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (*citing Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B. Analysis

The ALJ's credibility analysis addressed Mr. Canterbury's activities and medical treatment history. Tr. 17-20. Mr. Canterbury challenges these findings.

#### 1. Activities of Daily Living

The ALJ noted Mr. Canterbury's statements that he was limited in lifting, squatting, standing, walking, kneeling, and climbing stairs, could walk no more than a mile, stand no more than fifteen

or twenty minutes, and sit two hours. Tr. 18. The ALJ additionally noted Mr. Canterbury's report that lifting was difficult because it increased the pressure on his feet, and that he was "anxious and nervous" all the time. *Id.* The ALJ also cited Mr. Canterbury's reported daily activities, including caring for his infant daughter, preparing meals and performing housework, shopping, playing games and using a computer, watching movies, and spending time with his family. *Id.*

The ALJ concluded that Mr. Canterbury's reported activities were "inconsistent with the alleged severity of his impairments" (Tr. 18), and that Mr. Canterbury was capable of performing more exertional activity than he alleged. Tr. 19. The ALJ may cite a claimant's testimony that is inconsistent with a claimant's alleged limitations in finding the claimant not entirely credible. *Batson*, 359 F.3d at 1196. The ALJ's citation to Mr. Canterbury's activities should therefore be affirmed.

Mr. Canterbury now asserts that the ALJ erroneously based his credibility analysis upon a finding that Mr. Canterbury's activities do not indicate an ability to perform work activity. Pl.'s Opening Br. 12. Mr. Canterbury misstates the issue. The ALJ did not find that Mr. Canterbury's activities were equivalent to work activity; the ALJ found that Mr. Canterbury's activities were inconsistent with his alleged limitations and his allegation of total disability. Tr. 18-19. The ALJ may reject a claimant's testimony on this basis. *Batson*, 359 F.3d 1190, 1196 (9th Cir. 2004); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). The ALJ's reasoning was therefore sufficient under this legal standard.

Further, when two reasonable interpretations of a claimant's activities arise, this court must defer to the ALJ's interpretation of those activities. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir.

2001). The ALJ's interpretation of the evidence here is reasonable on this record, and this court therefore will not second-guess the ALJ's findings that Mr. Canterbury's activities, as he performed them, were inconsistent with his allegation of disability.

### 2. Conservative Treatment

The ALJ found "that the claimant reported that he did not take any medications and had not had any medical treatment as an adult, which further undermines the claimant's credibility with regard to the alleged severity of the impairment." Tr. 19. Mr. Canterbury asserts that the ALJ's citation to his "lack of medication or treatment for his impairments is not a clear and convincing reason to reject Mr. Canterbury's testimony about the severity of his impairments." Pl.'s Opening Br. 12.

The ALJ's credibility determinations may consider a claimant's failure to follow treatment, *Smolen*, 80 F.3d at 1284, or utilization of conservative treatment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). The record clearly shows that Mr. Canterbury neither sought nor utilized treatment for his vertical talus disorder throughout the period under review. Mr. Canterbury also did not seek continuing treatment for his alleged mental disorders during the period after his February 28, 2001, alleged onset date. The ALJ's findings on this matter are therefore based upon the record and the appropriate legal standard.

However, the ALJ may not chastise a claimant for failing to follow treatment he cannot afford. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Here, Mr. Canterbury clearly testified that he could not afford over-the-counter medications (Tr. 213), and the record also shows that Mr. Canterbury did not have health insurance in October 2008. Tr. 513. Mr. Canterbury also told

examining psychologist Howard Deitch, Ph.D., that he did not take medications "because he lives so far away from doctors," and that he received Oregon Health Plan coverage in 2003. Tr. 465. Mr. Canterbury therefore does not establish that he failed to seek treatment throughout the period under review merely because he could not afford treatment.

In summary, the ALJ's credibility findings should be affirmed.

## II.    Step Three Findings

Mr. Canterbury argues that the ALJ erroneously found that his vertical talus ("club foot") did not meet or equal the listed disorder § 1.02 pertaining to major joint dysfunction at step three in the sequential proceedings. Pl.'s Opening Br. 4-6. He also argues that ALJ's step three analysis pertaining to his alleged mental impairments is erroneous. *Id.* at 7.

### A.    Step Three Standards

At step three, the ALJ must determine whether a claimant's medically determinable impairment "meets" or "equals" associated criteria in the Commissioner's regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). This determination must be adequately explained. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

### B.    Analysis

#### 1.    Listing 1.02

The ALJ found that Mr. Canterbury's ankle symptoms did not meet the severity required for establishing disability under Listing 1.02, which addresses joint dysfunction. Tr. 15.

Listing § 1.02 directs that a claimant must first establish major dysfunction of a joint, which is:

> Characterized by gross anatomical deformity (e.g. subluxation,

> contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. Once the claimant meets this requirement, the claimant must also establish "involvement of one major peripheral weight-bearing joint (i.e. hip, knee, or ankle) resulting in inability to ambulate effectively . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02(A) (internal citation omitted).

"Inability to ambulate effectively" has an extensive and technical definition under the Commissioner's regulations:

> Inability to ambulate effectively means an extreme limitation of the ability to walk: i.e. an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b(1).

The opinion of examining physician Dr. King, which the ALJ accepted, clearly shows that Mr. Canterbury's vertical talus ("clubfoot") impairment is a "gross anatomical deformity": which constitutes "major dysfunction" of a joint. Tr. 269-71. Mr. Canterbury thus meets the first prong of Listing § 1.02.

However, Mr. Canterbury testified that he does not use a cane or other assistance for ambulation, and the record does not indicate that any was prescribed. Mr. Canterbury's reported inability to walk more than one mile does not itself constitute "ineffective ambulation" under the

10 - FINDINGS AND RECOMMENDATION

Commissioner's regulations quoted above. Mr. Canterbury does not meet the second prong necessary to establish disability under Listing § 1.02. The ALJ was therefore correct in finding that Mr. Canterbury's ankle impairment did not meet Listing 1.02.

In determining whether a claimant's impairment "equals" a listing at step three, the ALJ must "explain adequately his evaluation of alternative tests and the combined effect of the impairments." *Marcia*, 900 F.3d at 172. The ALJ found that Mr. Canterbury's ankle symptoms do not "medically equal the listing of 1.02 because there are no limitations of motion or other abnormal motion of the ankle, and imaging studies of the ankle did not show findings of joint space narrowing, bony destruction, or ankylosis. Additionally, the claimant is able to ambulate effectively." Tr. 15. The ALJ further discussed Mr. Canterbury's medical record pertaining to his ankle impairment throughout his opinion. Tr. 13-15; 18-20.

This court cannot affirm a cursory analysis at step three, *Marcia*, 900 F.3d at 172, but the ALJ's error at a non-dispositive step in the sequential analysis may be harmless if the ALJ adequately discussed the evidence in a subsequent step. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that error at step two is harmless if subsequent analysis discussed the relevant evidence). Because the ALJ discussed the evidence pertaining to Mr. Canterbury's ankle impairment at length throughout the sequential analysis, Mr. Canterbury fails to establish that the ALJ reversibly erred at step three.

### 2. Listings 12.04 and 12.08

Mr. Canterbury also asserts that the ALJ should have discussed the "combined effect" of his alleged mental disorders in conjunction with his physical impairments at step three in the sequential

analysis. Pl.'s Opening Br. 6-8. Mr. Canterbury's indicated authority addresses a claimant with "chronic pain syndrome," and states, in dicta, that this diagnosis has both physical and psychological components. *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995). Mr. Canterbury does not carry a "chronic pain syndrome" diagnosis, and has received no treatment for "chronic pain" as a disorder distinguished from his other impairments. The authority is therefore inapplicable to the ALJ's reasoning at step three.

The ALJ's step three findings addressed Mr. Canterbury's mental impairments at considerable length. Tr. 15-17. The ALJ considered whether Mr. Canterbury met Listings 12.04 and 12.08, which respectively address affective disorders and personality disorders. Tr. 15; 20 C.F.R. Subpart P, App. 1 § 12.04; 12.08. The ALJ addressed numerous medical chart notes, including the opinions of physicians and counselors treating Mr. Canterbury following his 1998 Tylenol overdose, and the April 2003 opinion of examining psychologist Howard Dietch, Ph.D. Tr. 15-17. In making this determination, the ALJ specifically discussed opinions that Mr. Canterbury was depressed and anxious, and carried diagnoses of adjustment disorder "versus depressive disorder," and coexisting personality traits "versus disorder." Tr. 14. Mr. Canterbury fails to show error in this analysis, and the ALJ's step three findings pertaining to his alleged mental impairments should therefore be affirmed.

### III. Medical Source Statements

Mr. Canterbury challenges the ALJ's evaluation of examining physician Leslie King, M.D., and reviewing physicians Shannon Eder, M.D., and Richard Alley, M.D. Pl.'s Opening Br. 8-9.

///

### A. Standards

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than to that of an examining physician. *Lester*, 81 F.3d at 830. The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician's opinion in favor of an examining physician's opinion. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a reviewing physician may not constitute substantial evidence when it contradicts the opinion of a treating or examining physician. *Lester*, 81 F.3d at 831.

### B. Analysis

Mr. Canterbury's challenge to the ALJ's analysis of the opinions of examining physician Dr. King, and reviewing physicians Drs. Alley and Eder, first repeats his assertion that the ALJ erroneously evaluated his impairments at step three. Pl.'s Opening Br. 8-9. This argument has already been discussed, and rejected, and the court will not repeat that discussion here.

Mr. Canterbury also asserts that the ALJ rejected Dr. King's opinion that his ankle range of motion was limited, Dr. Alley's opinion again noting limited range of motion in the ankles, and Dr. Eder's opinion that Mr. Montgomery has ankle joint stiffness and limited motion. *Id.* at 9. The ALJ accepted that Mr. Canterbury has limited range of motion in his ankles, and specifically cited Dr. King's opinion in making this finding. Tr. 14. The ALJ's findings regarding Mr. Canterbury's ankle

range of motion are consistent with the opinions of Drs. King, Alley, and Eder on his ankle range of motion, and Mr. Canterbury therefore fails to establish error in this point. Mr. Canterbury does not challenge the ALJ's remaining findings regarding Drs. King, Alley, and Eder. For these reasons, the ALJ's findings pertaining to the opinions of Drs. King, Alley, and Eder should be affirmed.

## IV.  Lay Testimony

Mr. Canterbury asserts that the ALJ improperly addressed testimony submitted by his girlfriend, Aimee Krueger. Pl.'s Opening Br. 14-16.

### A.  Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(d);416.913(d); 416.945(d); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2008). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may reject lay testimony predicated upon the testimony of a claimant found not credible. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

### B.  Analysis

Ms. Krueger testified at Mr. Canterbury's May 7, 2009, hearing before the ALJ. Tr. 48-54. She stated that they have lived together for five years, and that Mr. Canterbury taps his feet due to anxiety. Tr. 48-49. He also experiences foot pain that interferes with his sleep (Tr. 49), and has tried many different kinds of shoes to alleviate his symptoms, which all cause discomfort. Tr. 50. Ms.

Krueger testified that she has witnessed Mr. Canterbury's "antisocial" behavior, and Mr. Canterbury does not get along with Ms. Krueger's family. Tr. 5-51. She also stated that Mr. Canterbury becomes "very defensive" upon receiving workplace criticism, and she thought he had a delusional disorder because he inconsistently reports whether he has done household chores such as dishes. Tr. 53. Ms. Krueger did not think Mr. Canterbury could perform a sedentary job because he is distracted by concerns about whether other people are looking at his feet. Tr. 53. At these times "he can get very flustered, easily frustrated," and has difficulty staying on task. Tr. 53-54. She did not think Mr. Canterbury had received any mental health treatment. Tr. 54-55.

The ALJ discussed Ms. Krueger's testimony, and concluded that he found her statements "generally credible," but "not consistent with a finding of total disability, and I do not consider them in my determination of the claimant's residual functional capacity." Tr. 19. The ALJ must give reasons germane to the witness for rejecting lay witness testimony. *Nguyen*, 100 F.3d at 1467. The ALJ's generic statement is not "germane" to Ms. Krueger. However, Ms. Krueger did not describe workplace limitations that established further restrictions than those assessed by the ALJ's sedentary RFC. Though she described instances of Mr. Canterbury's frustration in the workplace and inability to get along with her family, Mr. Canterbury does not now point to limitations that would alter the ALJ's RFC finding.

Though Ms. Krueger stated that she thought Mr. Canterbury had a delusional disorder because he could not recall when he failed to complete washing the dishes (Tr. 53), this testimony does not establish that Mr. Canterbury had a delusional disorder that would interfere with workplace functioning. Mr. Canterbury now submits that Ms. Krueger "agreed with the doctor who diagnosed

15 - FINDINGS AND RECOMMENDATION

Mr. Canterbury with a delusional disorder." Pl.'s Opening Br. 15. Mr. Canterbury does not now point to this evidence or diagnosis, *id.*; the hearing transcript refers only to an unidentified physician who made a "provisional" delusional disorder "type" assessment. Tr. 52. The record shows that examining psychologist Dr. Deitch assessed a provisional delusional disorder, "prosecutory type," diagnosis on April 15, 2003. Tr. 469. This was based upon Mr. Canterbury's report that he believed the police and the Department of Human Services ("DHS") were plotting against him to take his children, which Mr. Canterbury made in an examination performed in conjunction with DHS proceedings regarding his custody of his children. Tr. 469. Ms. Krueger's 2007 testimony about domestic conflict regarding dishes neither supports nor detracts from Dr. Deitch's 2003 provisional finding of a prosecutory delusional disorder. The ALJ properly discussed Mr. Canterbury's mental health diagnoses, as discussed above, and Mr. Canterbury therefore does not establish reversible error in the ALJ's analysis of Ms. Krueger's testimony as it pertains to the provisional delusional disorder assessment.

## V.     Vocational Expert Testimony

Finally, Mr. Canterbury asserts that the ALJ failed to include all limitations in his questions to the vocational expert at step five in the sequential proceedings. Pl.'s Opening Br. 16.

### A.     Standards: Step Five

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); 416.920(a)(4)(v). Here the ALJ may take administrative notice of the occupational data contained in the *Dictionary of Occupational Titles*, or draw upon a vocational expert's testimony to show that a claimant can perform work in the

national economy. 20 C.F.R. § 404.1566(d-e); 416.966(d-e). The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ need not include unsupported limitations. *Id.*

### B.     Analysis

#### 1.     Workplace Supervision

Mr. Canterbury first asserts that the ALJ's questions to the vocational expert failed to include alleged limitations regarding his ability to respond appropriately to supervision. Pl.'s Opening Br. 16-17. Mr. Canterbury cites his own testimony and that of Ms. Krueger regarding his alleged delusional disorder, and asserts that this evidence establishes a paranoia which limits his ability to respond appropriately to supervision. *Id.* at 17.

The ALJ properly rejected Mr. Canterbury's testimony for the reasons explained above. Therefore, the ALJ was not required to include limitations described in that testimony in his questions to the vocational expert. *Osenbrock*, 240 F.3d at 1165. Mr. Canterbury fails to establish error regarding that testimony.

Mr. Canterbury now again attempts to tie Ms. Krueger's testimony to Dr. Deitch's provisional delusional disorder diagnosis, and argues that this diagnosis establishes that he is paranoid and cannot respond appropriately to supervision. The ALJ properly rejected Ms. Krueger's opinion for the reasons established above. Though Mr. Canterbury asserts that the ALJ "never made a credibility assessment regarding Dr. Deitch's report," Pl.'s Reply Br. 8, Mr. Canterbury points to no error in the ALJ's evaluation of Dr. Deitch's opinion. Further, Dr. Deitch's report addressed Mr. Canterbury's parenting abilities, and assessed no work-related limitations. Tr. 462-70. Mr.

Canterbury's argument that Ms. Krueger's testimony and Dr. Deitch's opinion together establish that he is paranoid and unable to respond to workplace supervision is simply not based upon the record. Because the ALJ properly rejected Ms. Krueger's testimony, he was not obliged to include limitations Ms. Krueger described in his questions to the vocational expert.

In summary, Mr. Canterbury does not establish that the ALJ erroneously omitted limitations pertaining to his ability to tolerate workplace supervision from his questions to the vocational expert.

### 2.  Concentration, Persistence, and Pace

Mr. Canterbury also asserts that the ALJ should have included limitations in his concentration, persistence, and pace, again based upon limitations cited in his own testimony. Pl.'s Opening Br. 17. Mr. Canterbury cites authorities pertaining to an ALJ's evaluation of concentration, persistence, and pace at length, but fails to acknowledge that his alleged limitations are based upon his own testimony only. *Id.* at 17-19. Because the ALJ properly rejected Mr. Canterbury's testimony, Mr. Canterbury cannot now establish that the ALJ should have included additional limitations based upon that testimony in his RFC.

In conclusion, the ALJ's questions to the vocational expert were based upon the record and applicable legal standards. Mr. Canterbury therefore fails to establish error on the matter, and the ALJ's step five findings should therefore be affirmed.

### **CONCLUSION AND RECOMMENDATION**

The Commissioner's decision that Mr. Canterbury did not suffer from disability, and is not entitled to benefits under Titles II and XVI of the Social Security Act, is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should affirmed.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due April 9, 2012. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days of service of the objections. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

IT IS SO ORDERED.

DATED this 22nd day of March, 2012.

John V. Acosta
United States Magistrate Judge